UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HART OIL & GAS, INC.,                                    Case No. 12-13558 t11

      Debtor.

MARILYN M. SMELCER,

      Plaintiff,

v.                                                       Adv. No. 14-01138 t

CITIZENS BANK OF KILGORE,

      Defendant.

**<u>MEMORANDUM OPINION</u>**

      Before the Court is Defendant's motion to dismiss all claims in this adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6). The matter has been fully briefed and argued. For the reasons set forth below, the Court will dismiss most of the claims because they were not reserved in the confirmed plan of liquidation.

I.     <u>FACTS</u>

      For the purpose of ruling on the Fed. R. Civ. P. 12(b)(1) arguments, the Court finds the following facts:[1]

      Debtor commenced this Chapter 11 case on September 25, 2013. Pre-petition, defendant Citizens Bank of Kilgore (the "Bank") was Debtor's main secured lender, having loaned Debtor $1,000,000.[2] The claims at issue arise from alleged Bank conduct that occurred pre-petition.

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

The Bank's secured claim was not listed as disputed, contingent, or unliquidated on Debtor's bankruptcy schedules. Debtor's schedules do not list any claims against the Bank. The Bank filed a proof of claim on March 14, 2013, asserting a secured claim of $1,028,622.66. No party ever objected to the proof of claim.[3]

Before the case was filed, the Bank had reached a tentative agreement to sell its secured claim to Palo Petroleum, Inc. ("Palo"). The sale was interrupted by the bankruptcy filing. The Bank disclosed the potential sale at the beginning of the case.

On the petition date, Debtor was in poor financial and operating condition. The lessor of Debtor's oil and gas property was unhappy with Debtor because of environmental problems at the field and general sloppy operations. The local electric utility had disconnected service, which was a major problem for oil production. The Bank was concerned about its loan and its collateral.

The Court approved a change in the operator of Debtor's oil and gas field on or about March 19, 2013. On June 24, 2013, the Court appointed a Chapter 11 Trustee. Between the new operator and the trustee, the estate's assets and operations were stabilized to a considerable extent.

---

[2] Some of the facts are found from taking judicial notice of the Court's docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), *aff'd*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[3] On May 27, 2015, Plaintiff filed in the main case an Amended Motion for an Order Extending Claims Objection Period or, in the Alternative, for Relief Under Sections 502(J) and 105(A) of the Bankruptcy Code, doc. 596 (the "Extension Motion"). A final hearing on the Extension Motion is scheduled for July 29, 2015.

A number of plans and disclosure statements were filed in this case, by Debtor, the Chapter 11 trustee, and a creditor group called the "Ad Hoc Committee of Creditors." No plan or disclosure statement ever alleged that the estate held claims against the Bank.

The Ad Hoc Committee filed a Third Amended Chapter 11 Plan of Liquidation (the "Plan"), as well as a Third Amended Disclosure Statement (the "Disclosure Statement"). The Disclosure Statement attaches Debtor's Schedule B, which lists all of Debtor's personal property. No claims against the Bank are listed in Schedule B. The Disclosure Statement also includes several liquidation analyses, none of which place any value on, or even mention, any claims against the Bank. Rather, the Bank is shown as having a valid secured claim of about $1,200,000. Paragraph 12.2 of the Disclosure Statement, entitled "Fraudulent Transfers and other Claims," makes no mention of any claims against the Bank, although it does have general reservation language.

At no time before confirmation did any party question the validity of the Bank's secured claim or allege that the estate held any lender liability or other claims against the Bank. No testimony in support of Plan confirmation mentioned any such claims.

The Court confirmed the Plan on September 27, 2013. The Plan contains the following language relevant to the motion to dismiss:

> Definitions:
>     1.16    Avoidance Action.  Any and all rights, claims and causes of action arising under any provision of chapter 5 of the Bankruptcy Code.
>     1.24    Cause of Action.  Any Claim or cause of action, legal or equitable, now owned or hereafter acquired by Debtor or the Liquidating Trustee, whether arising under contract, tort or federal or state law, including but not limited to Avoidance Actions or claims brought in the same proceeding as a claims objection, whether commenced prior or subsequent to the Petition Date.
>     1.74    Rights of Action.  Includes (a) any avoidance, recovery, subordination or other action of Debtor, the Estate or the Liquidation Trustee, (b) any Cause of Action of Debtor, the Estate or the Liquidation Trustee, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Interest.
>
>     6.3    Class 4 – Secured Claims.  The holder of an Allowed Class 4 Claim shall receive: (a) from the proceeds of sale of the Collateral securing such Claimant's Allowed Secured Claim

including any earned post petition interest through the date of sale, allowable attorneys fees and costs up to the Allowed Amount of the Claimant's Class 4 Claim and (b) $4,000 per month interest payment to Citizens Bank of Kilgore beginning ninety (90) days after the Effective Date.

11.6    <u>Preservation of Claims and Rights</u>.    Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief arising under the Bankruptcy Code unless this Plan or the Confirmation Order specifically and unambiguously so provides.  The non-disclosure or nondiscussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.  **This Chapter 11 Liquidation Plan reserves any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that Debtor may have against any former director, officer, insider, creditor or lender of Debtor. . . .**

The Disclosure Statement states on page 36:

**12.2 Fraudulent Transfers and Other Claims.**  Under the Bankruptcy Code and various state laws, Debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered Debtor insolvent.  The Liquidation Trustee reserves the right to bring fraudulent conveyance claims and other claims arising under state law including breach of fiduciary duty claims or tort claims against any Person who may have taken action against Debtor on a pre-petition basis.

The Ad Hoc Committee has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist.  These include but are not limited to claims against Andy Saied and other insiders of Debtor.  Creditors and Equity Interest holders are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan.  All avoidance actions and rights pursuant to §§ 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and all causes of action under state, federal or other applicable law including equitable marshalling of liens as to any secured creditor shall be retained and may be prosecuted or settled by the Liquidation Trustee in her sole discretion.  To the extent that material amounts are recovered, it will enhance the returns to the holders of Unsecured Claims.

The Plan appointed Plaintiff as the Liquidating Trustee, charged with, inter alia, stabilizing, operating, marketing, and selling Debtor's oil and gas properties.  From all accounts Plaintiff did a commendable job.  Unfortunately for her and the estate's unsecured creditors, Plaintiff was caught by a significant decrease in oil prices, which substantially reduced the value of the estate's oil and gas assets.  At one point Plaintiff thought she could sell the assets for more

-4-

than $4 Million. The ultimate sales price was about $2.1 Million, paid on or about February 20, 2015.[4]

After Plan confirmation, Plaintiff paid the Bank $4,000 per month, which was required by the Plan only if the Bank's claim was an "Allowed Class 4 Claim."

Plaintiff and the Bank apparently tried to negotiate the amount of the Bank's secured claim, an issue made more pressing by the low sales price. The negotiations fell apart, whereupon the Bank filed a motion under § 506(b) to determine the amount of its secured claim, while Plaintiff commenced this adversary proceeding. On March 20, 2015,[5] Plaintiff filed a Second Amended Complaint (the "complaint"), asserting equitable subordination, lien avoidance under § 544(a), claim objection, surcharge, equitable marshalling, and 14 state law lender liability claims.[6]

The complaint accuses the Bank of, inter alia, entering into a conspiracy with a convicted felon to cripple Debtor's oil production and force a cheap sale of Debtor's assets to Palo, whose president is a close friend of the Bank's owner and President. If all of the allegations in the complaint are true, the claims could have substantial value.

At the final hearing on the Bank's motion to dismiss, Plaintiff's counsel estimated that the claims against the Bank were worth $3.5 Million. If true, the claims would exceed the value of the oil and gas leases by 67%.

Plaintiff knew the basis of the asserted claims before the petition date. For example, she testified on March 12, 2015 that "Leading up to the bankruptcy I was aware of some highly

---

[4] The Chapter 11 trustee's plan proposed to sell the assets to Palo for $2.5 Million.
[5] About 2 ½ years after the bankruptcy case was filed.
[6] Counts II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, and XV (the "State Law Claims").

questionable conduct of the bank. For instance, I was told that Citizens was working with a felon who was defrauding Hart."

Plaintiff has consented to the Court hearing all claims in this matter. The Bank has consented to the Court hearing certain of the avoidance actions asserted, but not to hearing any of the state law counterclaims.

## II.    DISCUSSION

A.    Fed. R. Civ. P. 12(b)(1).

Federal courts are courts of limited jurisdiction; they may only hear cases authorized in the Constitution and conferred by a jurisdictional grant by Congress. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. *Ramming v. United States,* 281 F.3d 158 (5th Cir. 2001). Fed. R. Civ. P. 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1).

Motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

On a facial attack, the Court must consider the complaint's allegations to be true. *See Ruiz*, 299 F.3d at 1180; *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981).

If a party goes beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends, the trial court may not presume the truthfulness of the complaint's factual allegations and has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Fed.

-6-

R. Civ. P. 12(b)(1).  *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (10th Cir. 1990), and *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir. 1987).  Referring to evidence outside the pleadings does not convert the motion to a Rule 56 motion.  *Holt*, 46 F.3d at 1003; *Wheeler,* 825 F.2d at 259 n. 5.

Where, however, the jurisdictional issues raised in a Fed. R. Civ. P. 12(b)(1) motion are intertwined with the case's merits, the Court should resolve the motion under either Fed. R. Civ. P. 12(b)(6) and/or 56.  *See Franklin Sav. Corp. v. United States,* 180 F.3d 1124, 1129 (10th Cir. 1999); *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1324 (10th Cir. 2002)).

B.      *Stern*.

The Bank argues that the Court lacks jurisdiction to hear the State Law Claims under *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  This is a facial attack on the Court's subject matter jurisdiction.  The Court agrees that, to the extent Plaintiff seeks a money judgment against the Bank, there are *Stern* jurisdiction issues for all of the state law claims.  Nevertheless, that is not a sufficient reason to dismiss the claims.  Rather, the role of the bankruptcy court in such instances is to hear the claims and submit a report and recommendation to the district court.  *See, e.g., In re Lehman Bros. Holdings Inc.,* 480 B.R. 179, 193 (S.D.N.Y. 2012) (most courts addressing the issue have held that bankruptcy courts have the authority to issue reports and recommendations on *Stern* claims); *Kirschner v. Agoglia*, 476 B.R. 75, 82 (S.D.N.Y. 2012) (collecting cases).  *See also Parks v. Persels & Associates, LLC*, 509 B.R 345, 348 (D. Kan. 2014) ("In the wake of

*Stern* . . . the bankruptcy court's opinion was presented to this court as a Report and Recommendation"); *Kelley v. JPMorgan Chase & Co.,* 464 B.R. 854, 863 (D. Minn. 2011) (bankruptcy court has unquestioned authority to conduct pretrial proceedings and submit proposed findings of fact and conclusions of law to the district court).

Of course, the referral of the adversary proceeding from the district court to this Court may be withdrawn. *See* 28 U.S.C. § 157(d). In such an event, the proceeding would be transferred to the district court. Until that occurs, the appropriate role of this Court is to get all claims ready for trial, rule on all pre-trial motions, try all the claims, rule on the non-*Stern* claims, and issue a Report and Recommendation on the *Stern* claims.

C.      <u>Post-Confirmation Jurisdiction</u>.

The Bank also argues that, because the Court's jurisdiction "narrows" after confirmation of a plan of liquidation, the Court no longer has jurisdiction to hear any of the claims.[7] The issue of the post-confirmation jurisdiction of the bankruptcy court has been addressed in two recent cases in the Tenth Circuit. In *Santander Consumer, USA, Inc. v. Houlik (In re Houlik),* 481 B.R. 661 (10th Cir. BAP 2012), the Bankruptcy Appellate Panel agreed with the prevailing view that in such instances (i) the jurisdiction grant comes from 28 U.S.C. § 1334(b)'s "related to" jurisdiction, and (ii) not only must the matter be "related to" a case under title 11, but there must be a "**close nexus**" to the bankruptcy plan or proceeding. *Houlik,* 481 B.R. at 675 (quoting *In re Resorts Int'l, Inc.,* 372 F.3d 154, 167 (3d Cir. 2004) (emphasis added by the BAP)).

More recently, in *In re Angel Fire Corp.,* 2013 WL 1856350 (D.N.M. 2013), the district court affirmed the bankruptcy court's ruling that it lacked subject matter jurisdiction to hear a 2011 dispute that related to a plan of liquidation confirmed in 1995. The bankruptcy case in

_____

[7] This is also a facial attack on the Court's subject-matter jurisdiction.

question had been closed since 2001. In so doing, the district court adopted the "related to/close nexus" test articulated in *Houlik*. 2013 WL 1856350, at *12.

The main rationale for narrowing the bankruptcy court's jurisdiction after confirmation of a plan of reorganization is that the reorganized debtor should emerge from bankruptcy and re-commence business activities like any other entity:

> Once the bankruptcy court confirms a plan of reorganization, Debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. *In re Xonics, Inc.*, 813 F.2d 127, 130-32 (7th Cir. 1987); *In re Chicago, Rock Island & Pacific R.R.*, 794 F.2d 1182, 1186-87 (7th Cir. 1986). See also *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232–33 (4th Cir. 1987); *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir. 1986); *In re Gardner*, 913 F.2d 1515, 1518–19 (10th Cir. 1990).

*Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991).

Both *Houlik* and *Angel Fire* acknowledge that the scope of jurisdiction may be different for plans of liquidation rather than reorganization. Both cite *In re Boston Regional Medical Center, Inc.*, 410 F.3d 100 (1st Cir. 2005), which held:

> While courts have interpreted the term "related to" more grudgingly in some post-confirmation settings, context is important. Those narrowing interpretations have been invoked only with respect to actions involving reorganized debtors that have reentered the marketplace. No case has suggested that courts should abandon the general rule in all post-confirmation cases.

> Here, the Plan calls for the liquidation of BRMC, not its continuation as a going concern. The most salient difference between the usual Chapter 11 reorganization and a liquidating plan is that, in the latter instance, the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend. By definition, it has no authority to reenter the marketplace. That fact undercuts the primary purposes for parsimoniously policing the perimeter of post-confirmation jurisdiction: the specter of endless bankruptcy jurisdiction and a kindred concern about unfairly advantaging reorganized debtors. Accordingly, there is much less reason to depart from the general rule for related to jurisdiction where a claim involves a liquidating plan of reorganization.

-9-

410 F.3d at 106. For other cases drawing a distinction between plans of reorganization and liquidation, *see McKinstry v. Sergent,* 442 B.R. 567, 575 (E.D. Ky. 2011); and *In re Residential Capital, LLC,* 519 B.R. 593, 600 (S.D.N.Y. 2014).

The Court concludes that, under the "related to/close nexus" test, it has jurisdiction to hear the claims. First, the claims are intertwined with allowance and payment of the Bank's secured claim. Five of the 20 claims asserted in the complaint directly attack the Bank's secured claim. The remaining claims are asserted, at least in part, as offsets to the Bank's claim. It would make no sense for the Court to hear an objection to the Bank's claim without hearing all related claims; there would be too much overlap in the evidence.

Second, the outcome of the claims would directly affect Plaintiff's ability to pay creditors. If Plaintiff is right that her claims are worth $3.5 Million, she could pay all creditors in full and return money to Debtor.

D.      Reservation of Claims.

The Bank next argues that Plaintiff does not have standing to assert the claims because they were not "reserved" by the Plan. The Tenth Circuit deals with standing arguments under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6). *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224-25 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction."). Other courts have addressed standing under Fed. R. Civ. P. 12(b)(6). *See, e.g., Jackson v. Okaloosa County, Florida*, 21 F.3d 1531 (11th Cir. 1994). At a hearing held on June 8, 2015, the parties agreed that is was appropriate to treat the reservation of claims issue under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6). Since the merits of the claims do not have to be addressed to rule on the standing issue, the Court may proceed

-10-

under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6) and/or 56.  *Holt v. United States,* 46 F.3d at

1003; *Wheeler v. Hurdman,* 825 F.2d at 259 n. 5.

11 U.S.C. § 1123(b)(3) addresses the reservation of claims in Chapter 11 plans.  It

provides:

> (b)  subject to subsection (a) of this section, a plan may—
> . . .
>> (3)  provide for—
>>> (A) the settlement or adjustment of any claim or interest belonging to Debtor or to the estate; or
>>> (B) the retention and enforcement by Debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest.

1.     <u>Tenth Circuit Law on § 1123(b)(3)</u>.  In the Tenth Circuit, § 1123(b)(3) has been

interpreted to require Chapter 11 plans to specify any claims to be retained and enforced post-

confirmation; claims not specifically reserved are lost.  *See In re Mako, Inc.,* 120 B.R. 203

(Bankr. E.D. Okla. 1990), *on remand,* 127 B.R. 474, *aff'd,* 985 F.2d 1052 (10th Cir. 1993)

(avoidance actions not specifically reserved are lost);[8] *Mercury Companies, Inc. v. Comerica*

*Bank*, 2014 WL 561993, at 4 (D. Colo. 2014) (state law claims that are not specifically reserved

are lost).

The reservation of claims must be "clear."  *In re Mako, Inc.,* 985 F.2d 1052, 1055 (10th

Cir. 1993).  Furthermore, the Tenth Circuit in *Mako* quotes with approval the language from the

bankruptcy court that plan reservation language must be "specific and unequivocal."  *Id.* at 1055,

n. 3 (quoting 120 B.R. at 209).

In the Tenth Circuit as elsewhere, reasons for the "specify or lose it" rule vary.  The

*Mako* bankruptcy court reasoned that:

---

[8] *Mako* is less helpful than it might be because a major issue was whether the plaintiff was a proper representative of the estate.  That issue was intertwined with whether the claims were reserved by the plan, and it is not always easy to tell which issue the court was addressing.

-11-

> [b]ecause the confirmation of a Chapter 11 Plan dissolves the bankruptcy estate and the rights and powers created under the Bankruptcy Code, the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation. Without this language, the avoidance powers of the Trustee ... perish and become unenforceable.

120 B.R. at 209. The court also viewed the confirmed plan as a contract, which "must contain considerable specificity and certainty" and "should be interpreted most strongly against the party who caused [any] uncertainty to exist." *Id.* at 208. The Tenth Circuit did not comment on the contract rationale, but agreed with the bankruptcy court that § 1123(b)(3) required "specific and unequivocal" reservation of claims to preserve them for the estate. *Mako*, 985 F.2d at 1055, n. 3.

In *In re Western Integrated Networks,* 322 B.R. 156 (Bankr. D. Colo. 2005) Judge Romero used, in part, a contract law analysis to determine whether claims were preserved:

> The ability of a party to enforce a claim once held by the bankruptcy estate is limited to that which is retained under the terms of a confirmed chapter 11 plan. . . . A chapter 11 plan is a contract between a debtor and the creditors of the bankruptcy estate. . . . As such, it must be interpreted according to the general rules for contractual interpretation. . . . For a contract to be enforceable, it must be sufficiently certain to define the nature and extent of the parties' obligations. . . .

322 B.R. at 160-61 (citations omitted). Finally, in *Mercury v. Comerica*, the most recent case in this circuit, the district court emphasized the need for proper notice:

> In addition, Section 1123(b)(3) is, "at least in part, a notice provision. Creditors have the right to know of any potential causes of action that might enlarge the estate—and that could be used to increase payment to the creditors." *Harstad v. First Am. Bank,* 39 F.3d 898, 903 (8th Cir. 1994); *see also In re United Operating, LLC,* 540 F.3d 351, 355 (5th Cir. 2008) ("To facilitate [the] timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation.").

2014 WL 561993, at *4.

-12-

2.        § 1123(b)(3) Case Law From Other Jurisdictions.

a.        Is Specificity Required?   A few courts have held or implied that § 1123(b)(3) does not require specificity to reserve claims.   *See, e.g. In re Bleu Room Experience, Inc.,* 304 B.R. 309, 315 (Bankr. E.D. Mich. 2004); *In re Weidel,* 208 B.R. 848, 852 (Bankr. M.D.N.C. 1997).   The vast majority of courts, however, require specificity in claim reservation.   *See, e.g., Harstad v. First Am. Bank,* 39 F.3d 898, 902-03 (8th Cir. 1994); *Browning v. Levy,* 283 F.3d 761, 772-75 (6th Cir. 2002); *In re United Operating, LLC,* 540 F.3d 351 (5th Cir. 2008); *D&K Properties Crystal Lake v. Mutual Life Ins. Co. of N.Y.,* 112 F.3d 257 (7th Cir. 1997); *In re Commercial Loan Corp.,* 363 B.R. 559 (Bankr. N.D. Ill. 2007) (citing cases); *Kaye v. A.R.E. Distribution & Alpine Records, LLC (In re Value Music Concepts, Inc.),* 329 B.R. 111 (Bankr. N.D. Ga. 2005) (collecting cases).

b.        Rationale for Requiring Specificity.   The rationale for requiring specificity to reserve claims varies.   The following encompass most of the cases:

i)        Res judicata.   Construing §§ 1123(b)(3)(B) and 1141, courts hold that a confirmed plan is res judicata on the estate's claims against creditors, and vice versa, so if a claim is not specifically reserved, it is settled.   *See, e.g., Browning,* 283 F.3d at 772–75; *Alary Corp. v. Sims (In re Associated Vintage Group, Inc.),* 283 B.R. 549, 554–64 (9th Cir. BAP 2002); *In re Smith,* 2012 WL 2885794, at *3 (Bankr. D.N.M. 2012); *SouthTrust Bank, N.A. v. WCI Outdoor Prods., Inc. (In re Huntsville Small Engines, Inc.),* 228 B.R. 9, 13 (Bankr. N.D. Ala. 1998); *In re Kelly,* 199 B.R. 698 (9th Cir. BAP 1996); *In re Paramount Plastics, Inc.,* 172

-13-

B.R. 331, 334 (Bankr. W.D. Wash. 1994); *In re ATEK Information Services, Inc.,* 1994 WL 263431, at *4 (Bankr. N.D. Ohio 1994).[9]

           ii)    <u>Notice</u>.  Some courts hold that § 1123(b)(3), either with or without § 1125,[10] requires that reasonable and adequate notice be given to creditors of possible estate assets that will be pursued after confirmation, as well as whether any creditors are potential litigation targets, so creditors can make informed decisions about the proposed plan.  *See, e.g., Harstad,* 39 F.3d at 902–03 ("We view § 1123(b)(3) as, at least in part, a notice provision"); *Wooley v. Haynes & Boone, LLP (In re SI Restructuring, Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013) (reservation must be specific enough to inform creditors regarding their benefits and potential liabilities); *Mercury Companies v. Comerica Bank,* 2014 WL 561993, at *4; *Mickey Enterprises, Inc. v. Saturday Sales, Inc. (In re Mickey Enterprises, Inc.),* 165 B.R. 188 (Bankr. W.D. Tex. 1994) (citing § 1125, the court stated that the defendant/creditor was entitled to adequate information "of what Debtor's plan provided *with regard to it* so it could make an informed decision as to how to react" to the plan) (italics in original); *In re Paramount Plastics,* 172 B.R. at 334 (the court cited *Harstad* and § 1125 "which requires the disclosure of "adequate information" to allow a claimant to make an informed judgment about the plan.").  *See also Moecker v. Johnson (In re Transit Group, Inc.),* 332 B.R. 45, 57–58 (Bankr. M.D. Fla. 2005); *In re Value Music Concepts,* 329 B.R. 111, 118–19 (Bankr. N.D. Ga. 2005).

---

[9] The *Mako* decision could be characterized as resting on res judicata grounds, although the terms was not used.  The Tenth Circuit quoted with approval the bankruptcy court's holding that unless claims are "specifically and unequivocally reserved," they "perish and become unenforceable."  985 F.2d at 1056 n. 3.

[10] The Bankruptcy Code section requiring a written disclosure statement that accompanies a Chapter 11 plan, so creditors will have adequate information upon which to vote for or against the plan.

-14-

   iii) <u>Estoppel</u>. A corollary of the notice and res judicata theories is that Debtor is estopped from pursuing claims that were not specifically and unequivocally reserved. For judicial estoppel cases *see, e.g., Browning Mfg. v. Mims (In re Coastal Plains, Inc.,)*, 179 F.3d 197, 208 (5th Cir. 1999); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988); *Rosenshein v. Kleban,* 918 F. Supp. 98, 103–04 (S.D.N.Y. 1996); *Spicer v. Laguna Madre Oil and Gas II, LLC (In re Texas Wyoming Drilling, Inc.)*, 422 B.R. 612, 634-35 (Bankr. N.D. Tex. 2010). For equitable estoppel cases *see, e.g., Heritage Hotel L.P. I v. Valley Bank of Nev. (In re Heritage Hotel L.P. I),* 160 B.R. 374, 378–79 (9th Cir. BAP 1993), *aff'd*, 59 F.3d 175 (9th Cir. 1995); *In re Mickey's Enterprises,* 165 B.R. at 194.

   v) <u>Contract interpretation</u>. Several courts have applied contract interpretation principles to determine whether specific claims have been reserved by a plan of reorganization. *See In re KLN Steel Products Co., LLC,* 506 B.R. 461, 474 (Bankr. W.D. Tex. 2014); *In re Diabetes America, Inc.,* 485 B.R. 340, 346 (Bankr. S.D. Tex. 2012); *In re Ice Cream Liquidation, Inc.,* 319 B.R. 324, 333 (Bankr. D. Conn. 2005); *Western Integrated Networks, LLC,* 322 B.R. at 160-61; *In re Commercial Loan Corp.,* 363 B.R. at 570-71.

  c. <u>Degree of Specificity Required</u>.

   i. <u>Avoidance Actions</u>. Most courts have held that "avoidance actions" may be reserved by referring to the relevant Code section (e.g. all claims under § 547) or more generally to, for example, "Chapter 5 of the Code, including transfers avoidable by reasons of Sections 544, 545, 547, 548, 549, or 553(b) of the Code." *See, e.g., Temex Energy, Inc. v. Hastie & Kirshner (In re Amarex),* 96 B.R. 330 (W.D. Okla. 1989) ("all claims for the return of preference payments" is sufficient); *Western Integrated Networks*, 322 B.R. at 160-61 ("any claims or interests arising under Section 547 through 551" sufficient to reserve claims

-15-

under §§ 547 and 548); *In re USN Communications, Inc.*, 280 B.R. 573, 594 (Bankr. D. Del. 2002) ("all causes of action and remedies granted pursuant to . . . § 547" sufficient to reserve preference actions); *Value Music Concepts*, 329 B.R. at 120 ("avoidance actions arising under Chapter 5 of the Bankruptcy Code, which includes, without limitation, actions for the recovery pursuant to Section 550 of the Bankruptcy Code of transfers avoidable by reasons of Sections 544, 545, 548, 549, or 553(b) of the Bankruptcy Code" was sufficient to reserve a preference action). On the other hand, the more general description of "causes of action under Chapter 5 of the Bankruptcy Code" has been held to be too general to reserve claims. *See Slone v. M2M International, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861, 868 (E.D. Mich. 2005) (retention of "causes of action under Chapter 5 of the Bankruptcy Code" insufficient to reserve a preference claim).

   ii. <u>State Law Claims</u>. Courts have required more specificity to reserve state law claims such as malpractice,[11] breach of duty,[12] and lender liability claims.[13]

   iii. <u>Lower Standard if Defendant is Not a Creditor</u>. If the defendant was not a creditor, the amount of specificity required to reserve a claim may be lower. *See, e.g., In re Commercial Loan Corp.*, 363 B.R. at 570 (the rationale for requiring notice disappears entirely when the defendant is not a creditor); *Elk Horn Coal Co. LLC v. Conveyor Mfg. &*

---

[11] *Rossco Holdings, Inc. v. McConnell*, 2015 WL 3450194 (5th Cir. 2015); *In re SI Restructuring,* 714 F.3d at 864; *In re Nat'l Benevolent Ass'n of the Christian Church (Disciples of Christ),* 333 Fed. Appx. 822 (5th Cir. 2009); *Browning v. Levy.*

[12] *United Operating*, 540 F.3d at 355-56; *In re Crowley, Milner and Co.*, 299 B.R. 830 (Bankr. E.D. Mich. 2003).

[13] ; *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555 (9th Cir. 1992)*Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991); *Oneida Motor Freight,* 848 F.2d at 416; *Mercury v. Comerica*, 2014 WL 561993, at *1; *Heritage Hotel Partnership I*, 160 B.R. at 376; *Littlefield v. Union State Bank, Hazen, N.D.*, 500 N.W.2d 881 (N.D. 1993); *Bill Greever Corp. v. Tazewell Nat. Bank*, 504 S.E.2d 854 (Va. 1998).

*Supply, Inc. (In re Pen Holdings, Inc.),* 316 B.R. 503 (§ 1123 not designed to protect defendants against unexpected lawsuits).

                iv.    <u>Fact-Specific Inquiry</u>.  In *Pen Holdings*, Judge Lundin suggested that a case-by-case approach be adopted:

> *Browning* does not establish a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan. . . .  The words sufficient to satisfy § 1123(b)(3) must be measured in the context of each case and the particular claims at issue:  Did the reservation allow creditors to identify and evaluate the assets potentially available for distribution?

316 B.R. 495, 503 (Bankr. M.D. Tenn. 2004).  *See also In re Felt Mfg. Co., Inc.,* 402 B.R. 502, 516 (Bankr. D. N.H. 2009) (citing *In re Pen Holdings* and stating that "each case must therefore be evaluated on its own terms.").

                d.    <u>"Lying in the Weeds" not Allowed</u>.  The cases that demand the most specificity involve relatively large claims against a major creditor that are brought after confirmation of a plan with little or no prior warning.  *See, e.g., Oneida Motor Freight; Mickey's Enterprises; Westland Oil Development Corp. v. MCorp Management Solutions, Inc.,* 157 B.R. 100, 104 (S.D. Tex. 1993) (debtor not allowed to bury known assets like causes of action in general retention clauses); *In re Heritage Hotel Partnership I*, 160 B.R. at 378-79 (debtor equitably estopped from asserting lender liability claims that were not disclosed in schedules, plan, or disclosure statement); *Hay v. First Interstate Bank of Lakispell, N.A.,* 979 F.2d at 557 (to the same effect).[14]  Whether under the rubric of notice, res judicata, or estoppel, these courts have uniformly held that in such cases the estate is obligated to give very specific notice of the intent to reserve and bring the claims post-confirmation.

---

[14] For a good discussion of how § 1123(b)(3) prohibits "blind-siding" creditors, *see In re Bleu Room Experience, Inc.,* 304 B.R. at 313 (citing cases).

-17-

e. <u>Reference to the Disclosure Statement</u>. In determining whether claims have been reserved, courts have often consulted the disclosure statement that accompanied the plan. *See, e.g., SI Restructuring, Inc.,* 714 F.3d at 864-65; *Oneida Motor Freight,* 848 F.2d at 417-18; *Mercury Companies v. Comerica Bank,* 2014 WL 561993, at *5; *In re Felt Mfg.,* 402 B.R. at 518; *Commercial Loan Corp.,* 363 B.R. at 571; *Value Music Concepts,* 329 B.R. at 120-21; *Huntsville Small Engines,* 228 B.R. at 13; *Mickey's Enterprises,* 165 B.R. at 194;. Reviewing a debtor's disclosure statement to see if it sheds light on and gives notice of the claims to be reserved seems a reasonable step, whether the rationale for doing so is because the plan is a contract[15] or because of the notice concepts imported from § 1125 into § 1123(b)(3).[16]

3. <u>Likely Tenth Circuit Considerations</u>. Based on the case law cited above, the Court concludes that the following should be considered when addressing § 1123(b)(3) reservation issues:

- Reservations must be "clear," and "specific and unequivocal;"
- If the defendant was not a creditor, less specificity may be required, especially for routine claims;
- Avoidance actions may be reserved by referring to specific Code sections, e.g., "all § 547 claims," and possibly by general language such as "all actions under §§ 544-553 of the Code." In larger cases in particular, there is no need to list each avoidance action by claim and target defendant;
- State law claims require more specificity than avoidance actions. General reservation language such as "all state law claims" or "all claims sounding in contract or tort" is insufficient;
- The larger the claim, the more specific the reservation must be;
- Creditors should be given notice of large reserved claims and Debtor's intention with respect thereto, so they may take actions on the proposed plan with adequate information. This includes creditors that may be targets for post-confirmation litigation;
- The court generally may consider the disclosure statement when determining whether adequate notice of intent to pursue claims was given to creditors;

---

[15] *See, e.g., Commercial Loan Corp.,* 363 B.R. at 571 (plan was a contract to be read as a whole; it incorporated the disclosure statement by reference).
[16] *See, e.g., Harstad,* 39 F.3d at 903.

-18-

- Debtors may not "lie in the weeds" or "blind-side" creditors with significant, undisclosed post-confirmation lawsuits; and
- Whether § 1123(b)(3) is satisfied depends on the facts of the particular case;

4.  Application of the Law to the Facts.

a.  In general.  Plaintiff's claims against the Bank are large.  The Bank is a major creditor.  Assertion of the claims represents a significant change of position for the estate.  The reservation language in the Plan is so general and broad that the Court cannot think of a claim that is excluded.  The Disclosure Statement contains no disclosure that would alert creditors that the Ad Hoc Committee intended to pursue $3.5 Million lender liability claims against the Bank.

b.  Strong Arm Powers.  The Court concludes that Plan's reservation of "Avoidance Actions" was sufficient to reserve Count XVI (Strong Arm Powers).  The claim is brought under § 544(a), which is commonly thought of as an "avoidance action."  Paragraph 12.2 of the Disclosure Statement specifically refers to § 544.  The claim comes within the (very broad) definition of "Avoidance Action."  This is a close question because the Court believes the Ad Hoc Committee could have done a better job of disclosing this claim, but based on the dicta in *Mako* and the ruling in *Western Integrated Networks,* the Court finds that the claim was reserved.

c.  Equitable Subordination.  Defining "Avoidance Actions" as "any and all rights, claims and causes of action arising under any provision of chapter 5 of the Bankruptcy Code" was not sufficient to reserve or give adequate notice of Count I (Equitable Subordination).  While the claim arises under Chapter 5 (§ 510(c)), it is not commonly thought of or referred to as an "avoidance action."  Equitable subordination does not seek to "avoid" anything.  The Disclosure Statement did not mention § 510(c) when it discussed "potential recoveries under

-19-

Chapter 5."  If the Ad Hoc Committee intended to reserve a § 510(c) claim against the Bank, it was required to do more than bury the claim in overly broad definitions.  Further, the Ad Hoc Committee's use of the term "avoidance action" is inconsistent and ambiguous.  In the Disclosure Statement, for example, the term is used in its more limited, conventional sense. Elsewhere in the Plan the term is similarly used, without capitalization.  *See* paragraphs 1.74 and 7.1.  At the least, the term is ambiguous, and should be construed against the drafter.  *See Western Integrated Networks,* 322 B.R. at 161 (citing *Premier Resources Ltd. v. Northern Natural Gas Company,* 616 F.2d 1171, 1178 (10th Cir. 1980)).

        d.    <u>Surcharge</u>.  For the same reasons the equitable subordination claim was not reserved, Count XVIII (Surcharge) was not reserved.  Section 506(c) surcharge is not an "avoidance action" and the broad definition in the Plan was too general to reserve the claim.  No notice was given of this claim.

        e.    <u>Declaratory Judgment and Objection to Claim</u>.  Count XVII ("Declaratory Judgment and Objection to Claim") likely has either been addressed[17] or else is duplicative of Count XVI, but the Court finds that it was adequately reserved.[18]

        e.    <u>Equitable Marshalling</u>.  Although this is a close call, the Court concludes that the Plan sufficiently reserved Count XIX (Equitable Marshalling of Liens).  The Court

---

[17] See the Court's Order Granting in Part and Denying in Part Motion for Allowance in Interest and Attorney's Fees and Costs as Part of Secured Claim Pursuant to Provisions of 11 U.S.C. § 506(b), doc. 606, entered in the main case June 16, 2015.

[18] The ultimate viability of the reserved claims, including the "Objection to Claim," may depend on the outcome of the Extension Motion.  If the Court denies the motion, the Bank's claim would be finally allowed, and Plaintiff may be prohibited from attacking the claim.  *See, e.g., Sure-Snap v. State Street Bank,* 948 F.2d at 872; *In re Baudoin*, 981 F.2d 736, 741 (5th Cir. 1993) (if debtor wished to assert lender liability claims against bank, it should have done so by objecting to the bank's proof of claim); *In re Fluellen*, 446 B.R. 612, 616 (Bankr. M.D. Ga. 2011), *aff'd*, 2012 WL 74874 (M.D. Ga. 2012), *aff'd*, 731 F.3d 1189 (11th Cir. 2013) (citing cases).  The Court will rule on this issue if and when if arises, but makes not ruling at this time.

-20-

comes to this conclusion primarily because it is neither unfair nor surprising to ask a secured creditor to marshal its collateral if required by equity. Also, equitable marshalling is specifically mentioned in 12.2 of the Disclosure Statement.

        f.    <u>Other State Law Claims</u>. The Court concludes that the Plan did not reserve, in part because the Disclosure Statement gave no notice of, the State Law Claims. These are the heart of Plaintiff's lender liability counterclaims. The language purporting to reserve the claims is broad. The most specific reference to the claims reads: "any Claim or cause of action, legal or equitable . . . whether arising under contract, tort or federal or state law . . . ." If broadness were sufficient, then the claims would have been reserved. The law requires specificity rather than broadness, however. Where, as here, multiple large, very serious claims against the main creditor are brought post-confirmation, general reservation language is not enough. Much more disclosure and specificity was required under the particular facts of this case.

Even if the Bank had not been a creditor of Debtor (let alone the major secured creditor, taking a very active role in the case), Debtor's creditors would have been entitled to specific and detailed disclosure about the claims, including their estimated value, the estimated litigation costs, and an estimate of how long it would take to resolve the litigation.

While the Ad Hoc Committee likely did not intend to "blind-side" the Bank or "lie in the weeds,"[19] that would be the result if the state law claims were allowed to stand. The claims must be dismissed.

---

[19] It is more likely that neither the Ad Hoc Committee nor Plaintiff focused on any potential claims against the Bank until the oil and gas leases sold for so little.

E.      Rule 12(b)(6).

The Bank also argues under Fed. R. Civ. P. 12(b)(6) that each of the state law claims fails to state a cause of action upon which relief can be granted.  Given the ruling on reservation, the Court will not address the Rule 12(b)(6) issues.

F.      Judicial Estoppel.

The Bank argues that Plaintiff is judicially estopped from "asserting any claims to avoid the Bank's rights against the estate."  Motion, p. 29.  For judicial estoppel to apply, a party's prior position must be clearly inconsistent with its former position, the party must have succeeded in persuading a court to accept the former position, and the party must gain an unfair advantage in litigation if not estopped.  *See Eastman v. Union Pac. R. Co.,* 493 F.3d 1151, 1156-57 (10th Cir. 2007).  While the claims against the Bank are inconsistent with Debtor's bankruptcy schedules and all of the plans and disclosure statements filed in the case, there is no evidence the Plaintiff would gain an unfair advantage in litigation if not estopped, nor that Plaintiff persuaded the Court to accept its prior position.  Because of this, the Court concludes that the Bank's judicial estoppel argument is not well taken.

III.      CONCLUSION

Plaintiff's equitable subordination, surcharge, and lender liability claims against the Bank are the type of litigation that must be specifically, even conspicuously, reserved and disclosed in a plan.  That was not done here, so the claims were not reserved.  Counts XVI, XVII, and XIX, on the other hand, were sufficiently reserved and won't be dismissed, pending the outcome of the Extension Motion.  A separate order will be entered.

-22-

Hon. David T. Thuma
United States Bankruptcy Judge

Entered July 2, 2015

Copies to:

Spencer Lewis Edelman
P.O. Box 2168
Albuquerque, NM 87103

Kirk Allen Kennedy
4221 Avondale Avenue
Dallas, TX 75219

Nancy S Cusack
P.O. Box 2068
Santa Fe, NM 87504

Scott A. Ritcheson
821 ESE Loop 323, Ste. 530
Tyler, TX 75701

Gregory D. Binns
1722 Routh Street, Suite 1500
Dallas, TX 75201

-23-