UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

HART OIL & GAS, INC.,                                                Case No. 12-13558 t11

    Debtor.

ROBERT YAQUINTO, JR.,

    Plaintiff,

v.                                                                             Adv. No. 14-01138 t

JOHN N. EHRMAN,

    Defendant.

## **OPINION**

Before the Court is defendant John Ehrman's motion to dismiss all claims against him for lack of standing. Ehrman argues that the plan of liquidation confirmed in this bankruptcy case did not adequately reserve the claims against him, so plaintiff has no claims to pursue. The Court finds that the motion is well taken and should be granted.

I.     FACTS

For the purpose of ruling on the motion, the Court finds the following facts:[1]

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

Debtor commenced this Chapter 11 case on September 25, 2012. Debtor's principal was Andy Saied. Pre-petition, Citizen's Bank of Kilgore ("Bank") was Debtor's main secured lender, having loaned Debtor $1,000,000.[2]

On the petition date, Debtor was in poor financial condition. The Bank was concerned about its loan and collateral.

The Court approved a change in the oil and gas field operator on March 19, 2013. The United States Trustee's Office sought the appoint of a chapter 11 trustee, in part on the basis of environmental concerns and generally sloppy operations. On June 25, 2013, the Court approved the appointment of a chapter 11 trustee.

A number of plans and disclosure statements were filed in this case, by the Debtor, the chapter 11 trustee, and a group called the Ad Hoc Committee of Creditors ("Ad Hoc Committee"). The Ad Hoc Committee filed a Third Amended Chapter 11 Plan of Liquidation ("Plan") and Disclosure Statement ("Disclosure Statement").

The Plan proposed to vest all estate assets in a liquidating trustee, and designated Marilyn Smelcer as the initial liquidating trustee (with the successor trustee,[3] the "liquidating trustee" or "Plaintiff"). Ms. Smelcer was the principal of one of one of the Ad Hoc Committee members. As the liquidating trustee, she was charged with, inter alia, stabilizing, operating, marketing, and

---

[2] Some of the facts are found from taking judicial notice of the Court's docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket"); Since the parties ask the Court to interpret the confirmed plan, doc. 220, and the accompanying disclosure statement, doc. 222, the Court also takes judicial notice of these documents.

[3] Ms. Smelcer resigned her position on about October 27, 2015, and Robert Yaquinto was appointed the successor liquidating trustee.

selling Debtor's oil and gas properties. She also was appointed the estate representative for asserting causes of action. The Plan contains the following language:

> Definitions:
> 1.16 <u>Avoidance Action</u>. Any and all rights, claims and causes of action arising under any provision of chapter 5 of the Bankruptcy Code.
> 1.24 <u>Cause of Action</u>. Any Claim or cause of action, legal or equitable, now owned or hereafter acquired by Debtor or the Liquidating trustee, whether arising under contract, tort or federal or state law, including but not limited to Avoidance Actions or claims brought in the same proceeding as a claims objection, whether commenced prior or subsequent to the Petition Date.
> 1.57 <u>Liquidation Trustee Recovery.</u> Any recovery made by the Liquidation Trustee. The Liquidation Trustee shall have authority to pursue all Claims and Causes of Action to liquidate all assets held or recovered by the Estate, including Avoidance Actions.
> 1.74 <u>Rights of Action</u>. Includes (a) any avoidance, recovery, subordination or other action of Debtor, the Estate or the Liquidation Trustee, (b) any Cause of Action of the Debtor, the Estate or the Liquidation Trustee, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Interest.
> …
> 11.6 <u>Preservation of Claims and Rights</u>. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief arising under the Bankruptcy Code unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or nondiscussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief. **This Chapter 11 Liquidation Plan reserves any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that Debtor may have against any former director, officer, insider, creditor or lender of Debtor.**
> (emphasis in original).
> …
> 15.19 <u>Reservation of Claims</u>. The Liquidation Trustee reserve [sic] any and all claims and right against any and all third parties, whether such claims and rights arise before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution Date, including, without limitation, any and all Claim and causes of action for relief that the Liquidation Trustee may have against any director, officer, insider, creditor, lender, any insurer under any insurance policy, or any other person or entity. The entry of the Confirmation Order shall not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the

Liquidation Trustee relating to any Claims or causes of action. The Liquidation Trustee shall constitute the representative for the Debtor and its Estate for purposes of retaining, asserting and/or enforcing Claims and causes of action under Section 1123(b)(3)(B) of the Bankruptcy Code.

The Disclosure Statement states:

**3.1.4 Events Leading to Bankruptcy.**
According to its filings, the Debtor's prepetition financial problems stemmed from a decrease in oil price and increased refining costs lessened the Debtor's profit margins. Prior to filing the Debtor was involved in a possible purchase and sale agreement for the Leases. During the course of the sale discussions there was destruction of certain equipment and multiple wells were taken out of production as a result of this destruction…. The destruction, increased payments demanded by Citizen's coupled with the decrease in profit margins created a cash flow shortage forcing the Debtor to seek bankruptcy relief.
…
**12.2 Fraudulent Transfers and Other Claims.**
Under the Bankruptcy Code and various state laws, Debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered Debtor insolvent. The Liquidation Trustee reserves the right to bring fraudulent conveyance claims and other claims arising under state law including breach of fiduciary duty claims or tort claims against any Person who may have taken action against Debtor on a pre-petition basis.

The Ad Hoc Committee has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist. These include but are not limited to claims against Andy Saied and other insiders of Debtor. Creditors and Equity Interest holders are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan. All avoidance actions and rights pursuant to §§ 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and all causes of action under state, federal or other applicable law including equitable marshalling of liens as to any secured creditor shall be retained and may be prosecuted or settled by the Liquidation Trustee in her sole discretion. To the extent that material amounts are recovered, it will enhance the returns to the holders of Unsecured Claims.

The Court confirmed the Plan on September 27, 2013. The liquidating trustee did a good job of stabilizing oil production and cleaning up the environmental problems at the field, but had the bad luck to bring the assets to market after the 2014 oil price crash. Debtor's oil production assets, which the Ad Hoc Committee at one time thought might be worth $4 Million, eventually sold, in the Spring of 2015, for about $2 Million.

-4-

Plaintiff brought this adversary proceeding against the Bank on December 15, 2014. The original complaint stated a straightforward claim to avoid certain liens asserted against estate assets. In March 20, 2015, however, the liquidating trustee filed a second amended complaint, bringing 18 or so state law and other claims against the Bank, and bringing five state law claims against a new defendant, Ehrman.[4] The second amended complaint bears little resemblance to the original lien-avoidance suit.

Ehrman is not a creditor in the bankruptcy case, did not file a proof of claim, and is not on the Court's mailing matrix for the bankruptcy case. Ehrman was not involved in any litigation in the bankruptcy case. Debtor did not list any claims against Ehrman on its schedules. No plan or disclosure statement filed in this case by any party alleged that the estate held claims against Ehrman.

In April, 2015, the Bank moved for dismissal of the claims against it, arguing, inter alia, that the Plan did not adequately reserve the claims. On July 2, 2015, the Court dismissed most of Plaintiff's claims against the Bank for lack of standing.

Ehrman filed his motion to dismiss on March 15, 2016. In response, Plaintiff submitted an affidavit from Ms. Smelcer, detailing when she first learned of facts underlying the Ehrman claims. In the affidavit, Ms. Smelcer quotes a statement she made at a status conference on March 12, 2015 in the main bankruptcy case: "Leading up to the bankruptcy I was aware of some highly

---

[4] Plaintiff pled civil conspiracy, interference with prospective economic advantage, fraud, prima facie tort, and punitive damages. Plaintiff's second amended complaint accuses Ehrman of, inter alia, fraudulently entering into a contract to buy the Debtor's assets for $4,000,000. In the sales process, Ehrman allegedly used the assumed name 'Darrell Evans' and acted, unbeknownst to the Debtor, as both broker and buyer using his various entities. Furthermore, Ehrman allegedly entered into a conspiracy with the Bank to cripple Debtor's oil production and force a cheap sale of Debtor's assets to Palo Petroleum, Inc., whose president is a close friend of the Bank's owner and President.

-5-

questionable conduct of the bank. For instance, I was told that Citizens was working with a felon who was defrauding Hart." In the affidavit, Ms. Smelcer sought to clarify her prior statement, as follows:

> 4. Pre-bankruptcy, I knew Andy Saied was working with a man named Darrell Evans to sell his field.
> 5. Pre-bankruptcy, I had heard from Wayne Hartman and possibly Andy Saied that the Bank had provided Darrell Evans with Andy's personal financial information.
> 6. Pre-bankruptcy, Andy Saied had claimed that Hart field had been sabotaged by Bill Pinasco, a field hand he was using as part of his sale process, but I did not know who Bill worked for.
> 7. Pre-bankruptcy, I knew there was a forged document involved in the Hart Oil sale process
> 8. Pre-bankruptcy, I knew that Palo Petroleum wanted to buy Hart Oil.
> 9. After a review of my records, I determined that I had been told at least by November 7, 2012 that Darrel Evans was apparently the same person as John N. Ehrman. I don't recall exactly when it was related to me that John Ehrman was a convicted felon with a history of prior fraud.

The transition of this bankruptcy case from the sale of a distressed oil and gas property to a "litigation case" could not have been anticipated by reading the Plan and Disclosure Statement.

## II. DISCUSSION

A. Rule 12(b)(1).

The Tenth Circuit deals with allegations of lack of standing under Rule 12(b)(1). *See Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224-25 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction."). "Standing is a fundamental component of the court's subject matter jurisdiction and is appropriately raised in a motion to dismiss under 12(b)(1)." *Connolly v. City of Houston, Texas (In re Western Integrated Networks, LLC)*, 329 B.R. 334, 337 (Bankr. D. Colo. 2005).

Motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: "(1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter

jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

On a facial attack, the Court must consider the complaint's allegations to be true. *See Ruiz*, 299 F.3d at 1180; *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981). If a party goes beyond allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends, the trial court may not presume the truthfulness of the complaint's factual allegations and has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995). In such cases, referring to evidence outside the pleadings does not convert the motion to a Rule 56 motion, as long as the jurisdictional issues are not intertwined with the merits of the case. *Holt*, 46 F.3d at 1003; *See Franklin Sav. Corp. v. United States,* 180 F.3d 1124, 1129 (10th Cir. 1999).

When entertaining a motion to dismiss, a court is permitted "to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted). A court may also consider any documents to which the complaint refers, provided the documents are central to the plaintiff's claim and the parties do not dispute their authenticity. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941–42 (10th Cir. 2002).

Ehrman's motion to dismiss goes beyond the allegations contained in the complaint and challenges the facts upon which subject matter jurisdiction depends. Specifically, the motion to dismiss quotes Ms. Smelcer's statement on the record and asserts she had knowledge of the claims prior to confirmation. Plaintiff's affidavit in response attempts to clarify her statement. The parties consented to the Court ruling on this matter without an evidentiary hearing. The Court will proceed

under Rule 12(b)(1), and will consider Ms. Smelcer's statements on the record, the plan and disclosure statement, the allegations in the complaint, and Ms. Smelcer's affidavit. To the extent there are inconsistencies in the factual record, the Court will make findings for the limited purpose of ruling on the motion to dismiss.

B.   Standing.

"To establish standing … [Debtor] must show that it retained the claims it seeks to assert."[5] *Mercury Companies, Inc. v. Comerica Bank*, 2014 WL 561993, at *4 (D. Colo.). *See also VMI Liquidating Trust Dated December 16, 2011 v. Wells Fargo Home Mortgage, Inc.*, 12-01270-ABC, doc. 42, (Bankr. D. Colo. August 5, 2013) (to establish standing, plaintiff must show that plan retains claims to be asserted post-confirmation), *Connolly v. City of Houston, Texas (In re Western Integrated Networks, LLC*, 329 B.R. 334, 337-38 (Bankr. D. Colo. 2005) (same).

When the bankruptcy petition was filed, Debtor's claims against Ehrman became property of the bankruptcy estate. *See* § 541[6] (the filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."). *In re SI Restructuring, Inc.*, 714 F.3d 860, 864 (5th Cir. 2013); *In re Hedged Investments Associates, Inc.*, 84 F.3d 1281 (10th Cir. 1996) (trustee's standing to pursue claims rests on whether the claims belonged to the estate pursuant to § 541).

---

[5] The liquidating trustee argues that Ehrman is not a contract party to the plan, and therefore may not move to dismiss claims against him based on "ambiguous" reservation language in the plan. The Court concludes that Ehrman may raise the challenge to the liquidating trustee's standing, which goes to the Court's subject matter jurisdiction. *See, e.g., Rector v. City and County of Denver*, 348 F.3d 935, 942 (10th Cir. 2003) (standing raises jurisdiction questions that the court is required to consider *sua sponte*), *and In re Hill v. Vanderbilt,* 702 F.3d 1220, 1224 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction.").
[6] All statutory references are to 11 U.S.C.

-8-

Once the Plan was confirmed, the estate was dissolved and any causes of action not reserved by the Plan were lost. *In re Mako*, 120 B.R. 203, 209 (Bankr. E.D. Okla. 1990) ("Because the confirmation of a Chapter 11 Plan dissolves the bankruptcy estate and the rights and powers created under the Bankruptcy Code, the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation. Without this language, the avoidance powers of the Trustee … perish and become unenforceable."); *In re United Operating*, 540 F.3d 351, 355 (5th Cir. 2008) ("If a debtor has not made an effective reservation, the debtor has no standing to pursue a [state law] claim that the estate owned before it was dissolved."); *In re SI Restructuring, Inc.*, 714 F.3d 860 (5th Cir. 2013) (same); *Harstad v. First American Bank*, 39 F.3d 898, 904 (8th Cir. 1994) (bankruptcy estate dissolves upon confirmation of plan); *In re Diabetes Am., Inc.,* 485 B.R. 340, 343 (Bankr. S.D. Tex. 2012) ("After confirmation, the debtor is no longer the debtor-in-possession and does not have the authority to pursue claims previously owned by the estate—unless those claims were properly retained pursuant to § 1123(b)(3)(B)").

C.  Were The Claims Against Ehrman Reserved?

1.  Claim Reservation Law. Ehrman asserts that the claims against him were not reserved in the Plan, so Plaintiff lacks standing to bring them. § 1123(b)(3) addresses reservation of claims in Chapter 11 plans. It provides:

> (b)  subject to subsection (a) of this section, a plan may—
> . . .
> (3)  provide for—
> …
> (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest belonging to the debtor or to the estate];

In *Harstad v. First American Bank*, 39 F.3d 898 (8th Cir. 1994), the Eighth Circuit held that § 1123(b)(3) does not simply reiterate § 1141(b),[7] which would render the former section a "nullity," but instead places an affirmative duty on a plan proponent to identify any claims to be reserved for post-confirmation prosecution. 39 F.3d at 902-903. *See also In re Mako*, 985 F.2d 1052, 1055, n. 3 (10th Cir. 1993) (quoting with approval the bankruptcy court ruling to similar effect). *See generally In re Kmart Corp.*, 310 B.R. 107, 124 (Bankr. N.D. Ill. 2004) (plans with no reservation language reserve no claims).

Courts have also held that § 1123(b)(3) functions as a notice provision, requiring disclosure of reserved claims so creditors can take the information into account when deciding whether to vote in favor of the plan. *Harstad,* 39 F.3d at 903 ("Creditors have the right to know of any potential causes of action that might enlarge the estate – and that could be used to increase payment to the creditors…the creditors are entitled to know if the debtors intend to pursue the preferences in post-confirmation actions."); *Kmart Corp.*, 310 B.R. at 120 (§ 1123(b)(3)(B) serves as disclosure and notice function for voting creditors); *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011) (purpose of § 1123(b)(3) is to put creditors on notice of claims debtor wishes to pursue post-confirmation, and to give creditors adequate information to vote on plan).

The Court rules that § 1123(b)(3) functions both as an affirmative statutory duty to reserve claims, and as a provision requiring notice to creditors. In each function, adequate reservation language is required. The more difficult question is what reservation language is sufficient.

    2.    <u>Specific and Unequivocal Standard</u>.

---

[7] § 1141(b) states "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

-10-

This Court previously ruled that Tenth Circuit law requires chapter 11 plans to "specifically and unequivocally" reserve claims for those claims to survive confirmation. *See Marilyn M. Smelcer v. Citizens Bank of Kilgore (In re Hart Oil & Gas)*, 534 B.R. 35, 45-46 (Bankr. D.N.M. 2015). The ruling was based on *Mako*, 985 F.2d at 1055, n. 3 ("the retention provision of § 1123(b)(3)(B) requires specific and unequivocal language of reservation"). *See also Mercury Companies, Inc. v. Comerica Bank*, 2014 WL 561993, at *4 (D. Colo.) (interpreting *Mako* to require specific and unequivocal language of reservation); *In re Western Integrated Networks*, LLC, 329 B.R. 334, 339 (Bankr. D. Colo. 2005) (same); *In re Smith*, 2012 WL 2885794, at *3 (Bankr. D.N.M.) (same). *See also JP Morgan Trust Co. Nat. Ass'n v. Mid-Am. Pipeline Co.*, 413 F. Supp. 2d 1244, 1279 n. 20 (D. Kan. 2006) (cites *Mako*; appears to use the specific and unequivocal test).

  3. <u>Degree of Specificity Required</u>.

    a. <u>Avoidance Actions</u>. In *Mako* the Tenth Circuit cited to cases that held, for preference and other chapter 5 avoidance actions, referring to the relevant bankruptcy code section is specific enough to reserve the claim. 985 F.2d at 1055. Thus, a statement in a plan that the proponent reserves "all § 547 claims" is sufficient. This is the universal rule. *See, e.g., In re Value Music*, 329 B.R. 111, 119 n. 14 (Bankr. N.D. Ga. 2005) (collecting cases that allow reservation of claims by type or category, all of which involve preference or avoidance actions).

    b. <u>State Law Claims</u>. The law is much less settled for reservation of state law claims.

      i. <u>Courts are stricter with state law claims</u>. Reserving a state law claim is not as easy as reserving an avoidance action. *See, e.g., Groupwell Intern. (HK) Ltd. V. Gourmet Exp., LLC*, 2013 WL 309177, at *10 (W.D. Ky.) (distinguishing *Pen Holdings* because it dealt

-11-

with a § 547 action, not state law fraud and conspiracy claims); *IBM Southeast Employees Federal Credit Union v. Collins*, 2008 WL 4279554, at *11 (M.D. Tenn.) (same); *Moglia v. Keith (In re Manchester, Inc.)*, 2009 WL 2243592, at *5 (Bankr. N.D. Tex.) (differing requirements of specificity for avoidance actions and state law claims).

          ii.    <u>Cases describing the actual claim</u>.  Courts finding a sufficient reservation of such state law claims have been able to point to a discussion of the claims in the plan or disclosure statement.  *See, e.g., JP Morgan*, 413 F. Supp. 2d 1244, 1280 (D. Kan. 2006) (district court held that the debtor reserved the state law claims at issue, in part because its disclosure statement had a section titled "Known Claims Against Third Parties," which described the claims in sufficient detail); *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 570 (S.D.N.Y. 2003) (blanket reservation of "state law claims," plus a statement in the disclosure statement that the debtor was investigating claims against the Katzes); *In re Commercial Loan Corp.*, 363 B.R. 559, 571 (Bankr. N.D. Ill. 2007) (very specific language discussing the claim in the disclosure statement); *In re Antioch Co.*, 456 B.R. 791, 831 (Bankr. S.D. Ohio 2011) (schedule attached to plan identified almost all of the parties and causes of action at issue); *Asarco LLC v. Cemex, Inc.*, 2014 WL 2090614, at *3 (Bankr. W.D. Tex. 2014) (disclosure statement identified prospective defendants as parties who may be sued for "indemnity and contribution for environmental damages, harm, or injury" which the court deemed adequate).

          iii.    <u>Generic descriptions only</u>.  When no such discussion exists in the plan or disclosure statement, on the other hand, courts generally hold that the generic reservation language is not enough.  *See, e.g., Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) ("NW's blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of NW's [breach of duty and malpractice

-12-

claims] to be taken into account in the disposition of the debtor's estate."); *In re SI Restructuring*, 714 F.3d 860, 865 (5th Cir. 2013) ("any and all claims… legal or equitable, whether known or unknown" was a blanket reservation that failed to reference specific state law claims for fraud and breach of duty); *Mercury Companies, Inc. v. Comerica Bank*, 2014 WL 561993, at *5 (D. Colo.) (plaintiff did not reserve state law breach of contract and good faith claims with "all actions" blanket reservation language); *United Operating*, 540 F.3d at 356 ("if Dynasty had wanted to bring a post-confirmation action for maladministration of the estate's property during bankruptcy, it was required to state as much clearly in the Plan."); *D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York*, 112 F.3d 257, 261 (7th Cir. 1997) ("A blanket reservation that seeks to reserve all causes of action reserves nothing. To hold otherwise would eviscerate the finality of a bankruptcy plan.…"); *Blue Water Endeavors, LLC v. AC & Sons, Inc. (In re Blue Water Endeavors, LLC)*, 2011 WL 52525 (Bankr. E.D. Tex.). The Court did not find a case holding that "all state law claims" or "all tort claims," without more, was considered specific enough to reserve significant fraud and tort claims such as those brought against Ehrman.

    iv. <u>Case-by-case analysis of reservation sufficiency</u>. The degree of specificity required for claims is determined on a case-by-case basis. *In re Pen Holdings*, 316 B.R. 495 (Bankr. M.D. Tenn. 2004) ("The words sufficient to satisfy § 1123(b)(3) must be measured in the context of each case and the particular claims at issue: Did the reservation allow creditors to identify and evaluate the assets potentially available for distribution?"); *IBM Southeast Employees Fed. Credit Union v. Collins,* 2008 WL 4279554, at *11 (M.D. Tenn.) (same); *In re Regional Diagnostics, LLC,* 372 B.R. 3, 15 (Bankr. N.D. Ohio 2007); *In re Felt Mfg. Co., Inc.,* 402 B.R. 502, 516 (Bankr. D.N.H. 2009) (each case must be evaluated on its own terms); *In re Hart Oil*, 534 B.R. at 49-50.

v. <u>Generic reservation language not enough for significant, unusual claims</u>. Generic reservation language is good enough for chapter 5 avoidance actions, and may work for run-of-the-mill state court claims, but the Court holds that with more significant and unusual state law claims, generic reservation language is not sufficient to put voting creditors on notice of the potential asset. The plan proponent must reserve or describe the actual claim as best it can. Nothing in particular is required; courts should be somewhat forgiving of skimpy or partial language, if the plan proponent made a good faith effort to describe the actual claim and whether it intends to pursue it post-confirmation.

vi. <u>The Plan Language is Too Generic to Reserve the Ehrman Claims</u>. Here, the Plan's definition of "Cause of Action" is generic, albeit more detailed than "all actions." A creditor or other party reading the definition would have no idea if there were any such described claims, or whether the plan proponent was simply trying to satisfy the "specificity" requirement by using 57 parsing words instead of "all claims."[8] The definition of "Rights of Action" is equally general and nonspecific. The Plan paragraph preserving claims and rights (¶ 11.6) adds nothing substantive to the definitions except a reference to claims against any "former director, officer, insider, creditor or lender of the Debtor." The paragraph reserving claims (¶ 15.19) has more general language, although it refers to claims under insurance policies. The most specific discussion in either document is in paragraph 3.1.4 of the Disclosure Statement, where the plan proponents talk about destruction of certain equipment, causing multiple wells to be taken out of

---

[8] The Court does not believe that "all claims" is more of a blanket reservation than "any claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor… whether arising under contract, tort or federal or state law…" (Plan, ¶ 1.24)

-14-

production. Unfortunately, it is not in a section relating to reservation of claims, but merely describing events leading up to bankruptcy.[9]

Based on what the Ad Hoc Committee members knew when they drafted the Plan, they could have drafted a much more specific disclosure, like:

> The Plan Proponents are aware of questionable pre-petition conduct by Debtor's lender, Citizens Bank of Kilgore, and other parties. The conduct includes suspected sabotage of Debtor's oil field and wells when Debtor was attempting to sell them, and the preparation of a forged sales document. The Plan Proponents intend to investigate the facts thoroughly and bring claims against any party, including the Bank, whose conduct damaged the Debtor. The Plan reserves all such claims.

The generic nature of the Plan/Disclosure Statement's claim reservation language did not provide any significant notice to creditors, and did not comply with the requirement that § 1123(b)(3) do more than recapitulate § 1141(b) wholesale retention of assets. Perhaps with small, routine state law claims the Plan's generic language might suffice (like the generic reservation language for chapter 5 avoidance actions), but something more is required for large, unusual, allegedly valuable claims like the ones against Ehrman.

4.  Knowledge of the Claims.

Plaintiff argues that the Ad Hoc Committee did not know about the subject claims before confirmation, and therefore should not be required to reserve them. Two standing cases touched on the argument that the normal claim reservation rules might not apply to unknown claims. *See In re SI Restructuring*, 714 F.3d 860, 865-66 (5th Cir. 2013) (concluding plan proponents had sufficient knowledge of claims pre-confirmation to reserve them in the plan); *Ice Cream Liquidation*, 319 B.R. 324, 337 n. 21 (Bankr. D. Conn. 2005) (in adopting the "type or category"

---

[9] *See Blue Water Endeavors, LLC*, 2011 WL 52525, at *6 (description of facts that could give rise to a cause of action, found only in the disclosure statement section entitled "Events Leading up to Chapter 11, insufficient to reserve the claims).

-15-

rule for reserving preference claims, the court stated that one undesirable effect of a stricter rule would be that the issue whether debtor knew of the claims pre-confirmation might become relevant). Neither of these cases, however, had to rule on the issue.

A good argument can be made that knowledge is irrelevant to this issue of standing, and that failure to reserve claims means that all claims, known and unknown, are lost. If § 1123(b)(3) requires claims to be reserved by specific and unequivocal plan language, lack of knowledge would not be a defense. "As with any cause of action, at some point there must be repose." *Harstad*, 39 F.3d at 903.

The Court need not rule on that issue, however, because the Ad Hoc Committee had enough knowledge of the facts to make an adequate disclosure of the potential claims. Ms. Smelcer knew that (i) someone had sabotaged Debtor's oil field during the time Debtor was trying to sell the field; (ii) Darrell Evans was working with Andy Saied to sell the oil field; (iii) there was a forged document involved in the sale of the oil field; (iv) Darrell Evans was the same person as Ehrman, and (v) leading up to the bankruptcy, Ms. Smelcer was aware of some highly questionable conduct of the bank, e.g., she was told that the bank was working with a felon who was defrauding the Debtor.

Given the nature of the claims at issue, creditors were entitled to know as much as the Plan Proponents knew, even if many of the specifics of the claims were lacking on the confirmation date. To the extent the plan proponents had knowledge of any claims, they had an obligation to inform creditors of the extent of their knowledge. *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 323 (3d Cir. 2003), *quoting In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information ... prior to confirmation

-16-

to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed.'").

As with the claims against the Bank, Plaintiff's claims against Ehrman are extraordinary and large. Creditors could not anticipate that such claims would be brought absent "specific and unequivocal" reservation and/or disclosure of them. No such disclosure or reservation was made, even though it could have been. The claims therefore did not survive Plan confirmation.

### III. CONCLUSION

Plaintiff's state law tort claims against Ehrman are the type that must be specifically reserved and disclosed in a plan or disclosure statement. That was not done here, although the Ad Hoc Committee knew enough about the claims to make a reasonable attempt. Because the claims were not adequately reserved, Plaintiff does not have standing to assert them. A separate order dismissing the claims will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 13, 2016

Copies to:

Kirk Allen Kennedy
4221 Avondale Avenue
Dallas, TX 75219

Edward L. Friedman
811 Main St., Ste. 1100
Houston, TX 77002

Mark Barron
1801 California St., Ste. 4400
Denver, CO 80202